## Case No. 15,783.

### UNITED STATES v. MINTURN et al.

[21 Int. Rev. Rec. 182.]

Circuit Court, S. D. New York. April, 1872.[2]

CUSTOMS DUTIES — WITHDRAWAL BY VENDEE — LIABILITY ON BOND OF ORIGINAL IMPORTER.

Where original importers have entered goods for warehouse, and given a bond to secure the duties, and have subsequently sold the goods in bond and authorized the vendees to withdraw them from warehouse on payment of duties, and the goods are withdrawn without payment of the proper duties in full, the original importers are liable on their bond, after the withdrawal of the goods, for the balance of duties unpaid, and which should have been paid on the last withdrawal.

SHIPMAN, District Judge. This is a suit on a bond given to secure the payment of duties, dated August 2nd, 1865. The defendants, as the successors of Grinnell, Minturn. & Co., are the principals, and Clark, the surety. The condition will show the object of the bond, and is as follows: "The condition of this obligation is such, that if the above named principals, or either of them, their or either of their heirs, executors, administrators, or assigns, shall, on or before one year from the date of the importation of the goods, wares and merchandise hereinafter mentioned, withdraw the said goods, wares and merchandise in the mode prescribed by law, from the public store or bonded warehouse, where the same may be deposited at the port of New York, and well and truly pay or cause to be paid unto the collector of

1 [Reported by Hon. William Cranch. Chief Judge.]

2 [Affirmed in 106 U. S. 437, 1 Sup. Ct. 402.]

customs of the said United States for said port, the sum of twenty-three thousand seven hundred and eighty-seven and $^{99}/_{100}$ dollars, or the true amount, when ascertained, of the duties imposed by laws now existing, or to be hereafter enacted, upon said goods, wares and merchandise, the same having been imported by them," etc. The goods referred to consisted of 580 packages of sugar, and were entered for warehouse and deposited in the public stores. The duties were ascertained and liquidated, the weight being 755,621 lbs.; rate of duty, 3 cents per lb.: amount of the whole, $22,668.63. On the 9th of August, 1865, Grinnell, Minturn and Co., the importers and owners of the sugar, sold the whole cargo to Gibson, Early and Co., of Cincinnati, and endorsed at the foot of the warehouse entry as follows: "We hereby authorize Messrs. Gibson, Early and Co. to withdraw the sugars described in this entry. (Signed) Grinnell, Minturn & Co., August 9, 1865." There were three withdrawals. The first for transportation, Gibson, Early and Co., August 17, 1865; the second for consumption, by Wylie and Wade, August 27, 1865, and the third, for consumption, by Wylie and Wade, Sept. 4, 1865. The last two withdrawals were made by Wylie and Wade, in pursuance of an authority to that effect signed by Gibson, Early and Co., and entered at the foot of both withdrawal entries.

The act of August 18, 1846, § 1 (9 Stat. 53), authorizes the warehousing of goods, and provides that after the prescribed formalities have been observed the said goods, wares and merchandise shall be taken possession of by the collector or chief revenue officer of the port, and the importer, owner or consignee. The act then points out the manner in which the stores shall be secured, and proceeds as follows: "There to be kept with due and reasonable care, at the charge and risk of the owner, importer, consignee or agent, and subject at all times to their order upon payment of the proper duties and expenses, to be ascertained on due entry thereof for warehousing, and to be secured by a bond of the owners, importers or consignees, with surety or sureties, to the satisfaction of the collector, in double the amount of said duties, and in such form as the secretary of the treasury shall decide." The sale in bond of the sugars in question was in the usual course, and in pursuance of a custom universally recognised among merchants and by the collector of customs. The several deliveries were made upon the withdrawal entries in the usual way and upon the usual authorization to the purchaser, with the single exception, that at the last withdrawal, the officers delivered the goods without first exacting the full amount of duties due the United States, leaving a balance of $1,506.99 unpaid. To recover this sum the present suit was brought. The defendants insisted that under the circumstances they are not liable for the amount claimed. Their argument is that their sales

in bond are part of a system of dealing with warehouse goods, recognised and sanctioned by the government; that the latter treats the vendee as the owner, holds the goods as the primary security for the payment of the duties; and that the parties to the original bond are thenceforth no longer principals, but are sureties, and as such are entitled to the same protection as sureties in ordinary cases between individuals They insist upon the application of the general principle that where a party releases any portion of a primary security he, to that extent, releases the surety and this. too, whether such discharge of the security is the result of a direct and intentional act, or the result of mere laches. Now it is clear upon the proof in this case that the permit issued to Wylie and Wade on the 4th of September, 1865, to withdraw the balance of this importation, leaving $506.99 of the duties unpaid, was fraudulently or negligently issued It does not appear whether this was done corruptly or carelessly; but as fraud is not to be presumed in the present state of the proof, it must be deemed to have been issued negligently and improvidently. It was laches and gross laches. But assuming merely for the purpose of testing the right of the plaintiffs to the application of the rule above stated, that the plaintiffs, after the sale of the goods and the recognition of the vendees by the custom-house authorities, occupied toward the United States the position of sureties only, it does not, in view of the decided cases, follow that the laches of the agents of the government discharged the defendants. The doctrine that laches is not imputable to the government is too firmly fixed to be now shaken. U. S. v. Kirkpatrick. 9 Wheat. [22 U. S.] 720; U. S. v. Van Zandt, 11 Wheat. [24 U. S.] 184; Dox v. Postmaster-General, 1 Pet. [26 U. S.] 326; Hunter v. U. S. 5 Pet. [30 U. S.] 173; U. S. v. Lyman [Case No. 15.647].

In Dox. v. Postmaster-General, Marshall, C. J., after commenting on the case of U. S. v. Kirkpatrick, and the case of U. S. v. Van Zandt, remarks: "These two cases seem to fix the principle that the laches of the officers of the government, however gross, do not of themselves discharge the sureties on an official bond. from the obligation it creates, as firmly as the decisions of this court can fix it." The same general principle pervades the other cases cited, and it follows that the claim of the defendants is untenable. Judgment must be entered for the plaintiffs for $2,145.94, being the amount of principal with interest to the first day of the present term.

[The judgment of this court was affirmed by the supreme court. 106 U. S. 437, 1 Sup. Ct. 402.]